UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LIGHTING SCIENCE GROUP
CORPORATION, LED HOLDINGS,
LLC, and LED EFFECTS, INC.,

                              NO. CIV. S-08-761 LKK/JFM

       Plaintiff,

   v.

                                  O R D E R

KONINKLIJKE PHILIPS
ELECTRONICS N.V., PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION, PHILIPS SOLID-
STATE LIGHTING SOLUTIONS,
INC. as successor to COLOR
KINETICS, INC., and DOES 1-50,
inclusive,

       Defendants.

                              /

      Plaintiffs, Lighting Science Group Corp., LED Holdings, LLC ("LEDH"), and LED Effects, Inc. ("LEI") originally filed this suit in Sacramento Superior Court against defendants, Koninklijke Philips Electronics N.V., Philips Electronics North America Corp., (collectively "Philips") and Philips Solid-State Lighting Solutions, Inc ("PSSLS"). Defendants later removed the suit to this

1

Court, asserting jurisdiction based on 28 U.S.C. §§ 1331, 1332, and 1338. Plaintiffs now seek to remand the suit to state Court, alleging that this Court lacks subject matter jurisdiction over any of their claims against defendants. For the reasons discussed below, the Court grants plaintiffs' motion to remand.

## I. Background and Allegations

Plaintiffs and defendants are competitors in the field of energy-saving commercial lighting applications. Compl. ¶ 11. Prior to plaintiffs' and defendants' involvement with one another, plaintiffs were known as "pioneer[s] in the design and manufacture of LED [light-emitting diode] devices," an area of lighting manufacturing in which defendants sought to expand their presence. Compl. ¶¶ 12-17.

In late 2005 or early 2006, Philips contacted LEI about partnering in the development of LED technologies. Id. ¶ 25. In initiating the collaborative effort, Philips conducted due diligence that included the evaluation of LEI's "confidential business information" and "proprietary technologies and products," through which process Philips gained access to LEI's trade secrets and proprietary information. Compl. ¶¶ 26, 28. Confidentiality agreements bound all parties from utilizing any information gained during the due diligence process absent a further agreement. Compl. ¶ 28. In January 2006, LEI and Philips entered into a joint development agreement ("JDA") providing for the sharing of various information with the goal of developing LED products. Compl. ¶ 30. Both parties

2

1  continued to compete against other LED producers, with Philips
2  now using some of the technological information gained through
3  the JDA with LEI.  Compl. ¶¶ 20, 32.
4     In November 2006, Philips began to explore the possibility
5  of acquiring LEI.  Compl. ¶ 35, 36.  In doing so, Philips sought
6  the assistance of Pegasus Capital Advisors L.P. ("Pegasus") as a
7  co-investor, with whom Philips shared information gained during
8  its prior review of LEI's confidential and proprietary
9  information.  Compl. ¶ 36, 39.  It is also alleged that Philips
10 became privy to additional LEI proprietary information through
11 this process.  Compl. ¶ 39.  Philips ultimately withdrew from
12 the attempt to acquire LEI.  Compl. ¶ 41.  Pegasus, however,
13 acquired LEI on its own, resulting in the formation of LED
14 Holdings through the June 2007 acquisition.  Compl. ¶ 43. LED
15 Holdings then acquired a controlling interest in LSGC in October
16 2007. Id. ¶ 44.
17    At the same time Philips sought to acquire LEI, it was --
18 unbeknownst to LEI -- also exploring the possibility of
19 acquiring Color Kinetics, Inc. ("CK"), whom LEI characterizes as
20 its "direct competitor."  Compl. ¶ 46, 52.  Philips successfully
21 acquired CK in August 2007, resulting in the formation of PSSLS.
22 Compl. ¶ 47.  After this acquisition, plaintiffs allege that
23 Philips began sharing their confidential information with PSSLS.
24 Compl ¶ 52.  Plaintiffs further allege that Philips cited
25 problems with a collaborative project between itself and LEI,
26 the Plaza Hotel Project, as a pretense to both end the JDA

3

1  between itself and LEI as well as to orchestrate SSLS's
2  completion of the lighting on the Plaza Hotel Project.  Compl.
3  ¶¶ 54-58.  Philips terminated the JDA on February 15, 2008,
4  resulting in its withdrawal from two other large projects
5  entered into under the JDA.  Compl. ¶¶ 58-60.
6       On March 7, 2008, plaintiffs filed suit against defendants
7  in Sacramento Superior Court.  Plaintiffs' complaint seeks
8  recovery on numerous claims, including breach of the covenant of
9  good faith and fair dealing, breach of fiduciary duty,
10 intentional and negligent interference with plaintiffs'
11 contracts, intentional and negligent interference with
12 plaintiffs' prospective business relations, violation of
13 California Business & Professions Code section 17200 et seq.,
14 and misappropriation of confidential information (Cal. Bus. &
15 Prof. Code § 3426 et seq.).  Compl. ¶¶ 70-124.  On April 8,
16 2008, defendants removed plaintiffs' action to this Court.
17 Plaintiffs now move to remand the suit.

### II. Standard

19      The removing defendant always has the burden of
20 establishing federal jurisdiction. Gaus v. Miles, Inc., 980 F.2d
21 564, 566 (9th Cir. 1992). A defendant may remove any state court
22 action to federal district court if the latter court has
23 original jurisdiction under "a claim or right arising under the
24 Constitution, treaties or laws of the United States."  28 U.S.C.
25 § 1441; see also 28 U.S.C. § 1331. Whether a cause of action
26 arises under the Constitution, treaties, or laws of the United

4

States must be determined solely from what is contained in the plaintiff's well-pleaded complaint. Taylor v. Anderson, 234 U.S. 74, 75-76 (1914). Federal jurisdiction is not proper when the federal question only arises through the defendant's defense or the plaintiff's necessary response thereto. Id.; Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988).

Civil actions not involving a federal question are removable to a federal district court only if there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). Section 1332 requires that there be complete diversity; that is, each plaintiff's citizenship must be diverse as to each defendant's citizenship. Id. A defendant may remove a civil action that alleges claims against a non-diverse defendant when the plaintiff has no basis for suing that defendant, or in other words, when that defendant has been fraudulently joined. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998); McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). Where a non-diverse defendant has been fraudulently joined to an otherwise completely diverse case, that defendant is disregarded for diversity jurisdiction purposes. See, e.g., Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1176 (N.D. Cal. 2003).

In order to establish that a non-diverse defendant has been fraudulently joined, the removing party carries the heavy burden of establishing the absence of any possibility of recovery. Ritchey, 139 F.3d at 1318. The claim of fraudulent joinder must be supported by clear and convincing evidence, with all

ambiguities resolved in favor of the non-removing party. Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007); Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117-18 (N.D. Cal. 2002); Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1012 (N.D. Cal. 2001). In determining whether a non-diverse defendant has been improperly joined, courts may look beyond the pleadings and examine the factual record. McCabe, 811 F.2d at 1339.

### III. Analysis

Defendants contend that the court has jurisdiction over this action both because the action implicates federal law and because there is complete diversity among the proper parties. I consider each of these in turn.

**A.  Federal Question Jurisdiction**

District courts have original jurisdiction over civil actions that arise under any Act of Congress relating to patents.  28 U.S.C. § 1338(a). Determination of whether an action arises under federal patent law is guided by the same standard for determining whether federal jurisdiction exists under § 1331. Christianson, 486 U.S. at 809. There are two scenarios under which § 1338(a) jurisdiction is proper. Id. First, jurisdiction under § 1338(a) extends to cases where federal patent law creates a cause of action within the constraints of the well-pleaded complaint. Id. The defendants concede that this is not the grounds for jurisdiction here. Defendants' Opposition to Motion to Remand at 10.

1     Under the second prong of the <u>Christianson</u> test, a district
2 court must first examine all of the theories under which a
3 plaintiff may recover on a certain claim and next determine that
4 the resolution of a substantial question of federal patent law
5 is necessary for recovery on that claim. <u>Hunter Douglas, Inc. v.</u>
6 <u>Harmonic Design, Inc.</u>, 153 F.3d 1318, 1328-29 (Fed. Cir. 1998),
7 overruled on other grounds by <u>Midwest Indus., Inc. v. Karavan</u>
8 <u>Trailers, Inc.</u>, 175 F.3d 1356 (Fed. Cir. 1999). It is on this
9 ground that the defendants assert federal jurisdiction is
10 proper.
11     Where a plaintiff has pled alternative grounds for relief,
12 some of which do not rely on federal law, assertion of federal
13 jurisdiction is improper. <u>Christianson</u>, 486 U.S. at 810 ("a
14 claim supported by alternative theories in the complaint may not
15 form the basis of § 1338(a) jurisdiction unless patent law is
16 essential to each of those theories"); <u>Rains v. Criterion</u>
17 <u>Systems, Inc.</u>, 80 F.3d 339, 346 (9th Cir. 1996) (same, holding
18 federal jurisdiction improper in a suit for discrimination,
19 where plaintiff has alleged both state and federal theories);
20 <u>Am. Tel. & Tel. Co. v. Integrated Network Corp.</u>, 972 F.2d 1321,
21 1324 (Fed. Cir. 1992) (§ 1338(a) jurisdiction improper on a case
22 for unlawful use of trade secrets, where the alleged trade
23 secrets could have included non-patentable, as well as
24 patentable, inventions); <u>Conroy v. Fresh Del Monte Produce,</u>
25 <u>Inc.</u>, 325 F. Supp. 2d 1049, 1056 (N.D. Cal. 2004) (§ 1338(a)
26 jurisdiction improper where plaintiff had alleged, *inter alia*,

7

1  violations of the UCL based on defendants' misrepresentations
2  made to the public about a patented product; the plaintiff could
3  receive relief on every claim without an inquiry into the
4  enforceability of the patent); <u>Altavion v. Konica-Minolta Sys.</u>
5  <u>Lab., Inc.</u>, No. C-07-06358-MHP, 2008 WL 2020593 at *4-*5 (N.D.
6  Cal. May 8, 2008) (plaintiff's fraud claim did not meet the
7  second prong of <u>Christianson</u> because, although one theory of the
8  claim would have required a determination of the inventor of a
9  patented technology, there were alternate, non-federal theories
10 pled that would allow plaintiff to succeed in its fraud claim).
11     <u>Lippitt v. Raymond James Fin. Servs.</u>, 340 F.3d 1033 (9th
12 Cir. 2003), is informative to the application of <u>Christianson</u>'s
13 second prong to the facts of the instant case. There, the
14 plaintiff filed a complaint in state court, alleging that
15 defendants had violated the UCL, Cal. Bus. & Prof. Code § 17200
16 *et seq.*, in their marketing of certain "callable certificates of
17 deposit (CDs)." <u>Id.</u> at 1036. Defendants removed on the basis
18 that the complaint appeared to seek enforcement of the New York
19 Stock Exchange's rules and regulations, under the federal
20 Exchange Act. <u>Id.</u> The district court agreed, asserting
21 jurisdiction on the basis that plaintiff appeared to seek a ban
22 on the sale of the callable CDs. <u>Id.</u> at 1040.
23     The Ninth Circuit reversed, holding that the complaint
24 could be read as seeking to enforce only state law, not federal
25 law. <u>Id.</u> at 1037, 1040. Specifically, the complaint could be
26 interpreted to only challenge the marketing techniques of the

8

defendants, not necessarily requiring a ban on sale of the callable CDs for relief. Id. That the defendants' misconduct under state law "overlaps with conduct that is likewise proscribed by" federal law did not transform the complaint into one that was necessarily federal in character. Id. at 1037, 1040 (citing Merrell Dow); see also Uroplasty, Inc. v. Advanced Uroscience, Inc., 239 F.3d 1277, 1279-80 (Fed. Cir. 2001) (plaintiff's allegations that defendant improperly divulged trade secrets in applying for a patent did not create jurisdiction under § 1338(a) as they did not require the resolution of questions of federal patent law).

Under certain narrow circumstances, federal jurisdiction may be exercised when plaintiffs' claims are simply federal claims disguised within state causes of action. In Lippitt, for example, the defendants asserted that federal jurisdiction was proper because the plaintiff had artfully phrased his federal claim as a state law claim under the UCL, for the purpose of avoiding federal jurisdiction. 340 F.3d at 1041. The court acknowledged that artful pleading was an improper way to defeat removal of a federal claim, but cautioned that courts should invoke the artful pleading doctrine "only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." Id. Nonetheless, notwithstanding a plaintiff's artful pleading, a federal court may assert jurisdiction where the causes of action are completely preempted by federal law or where the state law

9

claims implicate "a substantial federal question." Id. at 1042; see also Baker v. BDO Seidman, L.L.P., 390 F. Supp. 2d 919, 924 (N.D. Cal. 2005) (observing that the Ninth Circuit's construction of the artful pleading rule favors remand more often than the Second Circuit's more liberal construction of the rule).

A substantial federal question exists where "a substantial, disputed question of federal law is a *necessary* element of the well-pleaded state claim" or where the plaintiff's right to relief depends on the resolution of a substantial, disputed question of federal law. Lippitt, 340 F.3d at 1042 (emphasis in original). In Lippitt, the court concluded that the plaintiff's claim did not implicate a substantial federal question, because plaintiff had pled it under the UCL. The UCL, the court explained, prohibits conduct that is "unlawful, unfair, or fraudulent." Id. at 1043. Because the statute was written in the disjunctive, the plaintiff could prove that defendants violated the UCL without necessarily showing that their conduct was unlawful under federal securities law. Id. at 1043, 1045-46. Moreover, the relief plaintiff sought was defendants' liability under the UCL, not enforcement of federal laws. Id. Remand, therefore, was proper. Id.

Here, the defendants have not shown that there is a substantial federal question intrinsic to any of the plaintiffs' claims. Plaintiffs have pled four causes of action that arguably implicate federal patent law: breach of covenant of good faith

10

and fair dealing (first cause of action), breach of fiduciary duty (second cause of action), violation of California Business & Professions Code § 17200, et seq. (seventh cause of action), and misappropriation of confidential information (eighth cause of action). None of these, however, require the resolution of questions of federal law in order for plaintiffs to succeed.

First, the plaintiffs' seventh causes of action alleges violations of California's Unfair Competition Law. Compl. ¶¶ 109-113. Plaintiffs allege that defendants have committed unfair acts by, among other things, prosecuting baseless patent infringement actions against third parties, using plaintiffs' confidential information in pursuing these actions, and wrongly asserting to third parties that the plaintiffs were infringing on a defendant's patents. Id. ¶¶ 110-111. As in Lippitt, the plaintiffs could succeed on these claims by showing the validity or invalidity of the patents under federal law. However, the plaintiffs could also succeed on these claims on wholly state grounds, as well. This is highlighted by the fact that the plaintiffs pled that defendants acted unfairly, not unlawfully; consequently, a court need not determine the lawfulness of the patents at issue in order to grant relief on this claim. FAC ¶ 111; see Lippitt, 340 F.3d at 1043.

For instance, plaintiffs assert that defendants pursued suits against third parties for patent infringement that they knew were baseless, which therefore constitutes an unfair business practice under the UCL. See Plaintiff's Reply to

11

Defendants' Opposition to Motion to Remand at 11; FAC ¶ 111.a. Plaintiffs allege that there is evidence that defendants were cautioned by Philips' in-house counsel that it appeared that no patent infringement had occurred, but that defendants nevertheless filed their suits.[1] Reply at 12. A state court could reasonably find that defendants' filing of a suit in those circumstances was "unfair" under the UCL, without needing to consider the validity of the patents themselves. Cf. Conroy, 325 F. Supp. 2d at 1056 (defendant's marketing of a product could be an unfair business practice regardless of whether defendant's patent for the product was valid).

Moreover, despite defendants' argument to the contrary, the relief plaintiffs seek does not require resolution of federal questions. Plaintiffs seek the court to enjoin the defendants from engaging in unfair business practices. FAC, Demand for Judgment ¶ 3. These alleged unfair business practices include defendants' pursuit of "baseless" patent lawsuits against plaintiffs and creating a "cloud" around plaintiffs by representing to third-parties that plaintiffs are patent infringers. FAC ¶ 111.a, 111.h. Defendants contend that a court

---

[1] At oral argument, defense counsel indicated that the patent cases proceeding in the District of Massachusetts will resolve whether the advice in this memo was accurate and therefore indicates the federal character of this plaintiffs' claim. The accuracy of the advice in the memo, however, appears to the court to be a possible *defense* to plaintiffs' claim, and not a necessary element in order for plaintiffs to make their prima facie case. That a defense may implicate federal law does not suffice to confer jurisdiction to the court. Metcalf v. City of Watertown, 128 U.S. 586 (1888).

12

1  must necessarily determine the validity of the patents in order
2  to grant or deny this injunctive relief.
3       Though that may be true, it does not transform plaintiffs'
4  seventh cause of action into one implicating federal law. The
5  seventh cause of action alleges several unfair business
6  practices, for all of which the plaintiff appears to seek an
7  injunction. A state court could decide in plaintiffs' favor on
8  wholly non-federal grounds (i.e., without determining the
9  validity of the patents or whether they were infringed) and
10 grant an injunction on those grounds alone. Although this means
11 that the *scope* of the injunction may be different than that
12 which a federal court might grant if it considered the validity
13 of the patents or their infringement, it does not mean that the
14 *nature* of the relief is such that only a federal court could
15 provide relief. See, e.g., Lippitt, 340 F.3d at 1040 (injunctive
16 relief plaintiff sought could be granted on the narrow grounds
17 of enjoining the improper marketing of callable CDs rather than
18 enjoining their sale, the latter of which could only be
19 performed by a federal court). Because a court need not
20 necessarily rely on federal law to determine the plaintiffs'
21 right to relief on the seventh cause of action nor is the relief
22 sought of the nature that only a federal court could provide it,
23 the Christianson standard is not met by plaintiffs' seventh
24 cause of action.
25      Plaintiffs' first, second, and eighth causes of action more
26 plainly fail to meet the Christianson standard. Arguably, all of

1  them implicate patent law to the extent that they allege that
2  defendants divulged confidential information of the plaintiffs.
3  See FAC ¶¶ 72, 77, 115-18. These do not meet the Christianson
4  standard because a court could find that defendants unfairly
5  used plaintiffs confidential information and unfairly asserted
6  to third parties that plaintiffs infringed on defendants'
7  patents without needing to reach the question of whether the
8  patents were lawful or whether infringement occurred. See, e.g.,
9  Conroy, 325 F. Supp. 2d at 1056; Am. Tel. & Tel. Co. v.
10 Integrated Network Corp., 972 F.2d at 1324. Similarly, a state
11 court could find that the information at issue was
12 "confidential," "proprietary" and a trade secret, without
13 needing to address the question of whether plaintiffs possessed
14 a valid patent to them. Cf. Am. Tel. & Tel. Co. v. Integrated
15 Network Corp., 972 F.2d at 1324; Uroplasty, Inc., 239 F.3d at
16 1279-80.

17     Consequently, because a court could find that defendants
18 acted improperly without basing this conclusion on patent law,
19 the plaintiffs' suit does not require the court to construe or
20 enforce patent law. Therefore, as in Lippitt and Christianson,
21 because there are alternative state-law theories under which the
22 plaintiffs could recover and because state law may afford
23 plaintiffs all the relief they seek, jurisdiction based upon §
24 1338(a) is not proper. Christianson, 486 U.S. at 810; Lippitt,
25 340 F.3d at 1043, 1045-46.

26     Nor is federal jurisdiction proper on the grounds that, as

defendants assert, allowing the action to proceed in state court would improperly permit state court intrusion in an on-going federal court (District of Massachusetts) case. Defendants cite no case, let alone a controlling authority, that would confer jurisdiction on this court simply to avoid such a conflict.[2] Moreover, as explained above, the state court need not reach the patent law questions that the defendants assert are before the Massachusetts court. See Opposition to Motion to Remand at 19-20. Any conflict, therefore, is illusory, even if it could constitute a basis for this court's jurisdiction.

Finally, there appears no authority that supports defendants' argument that jurisdiction is proper under 28 U.S.C. § 1338(b). That subsection allows federal courts to assert jurisdiction over unfair competition claims "when joined with a substantial and related claim under the . . . patent . . . laws." It in no way allows a federal court to assert jurisdiction where, as here, the plaintiffs' claim is not one arising out of or necessarily implicating patent law. See Pursche v. Atlas Scraper & Eng'g Co., 300 F.2d 467, 484 (9th Cir. 1961) (describing purpose of § 1338(b)).

**B.  Diversity Jurisdiction**

The defendants also assert, in their notice of removal and

---

[2] This conflict need not come to pass, even if the state court and District of Massachusetts were considering the same issues, as either court may stay their case pending resolution of the other. Indeed, the doctrine of collateral estoppel exists to address just such a situation.

15

opposition to the motion to remand, that federal jurisdiction exists under 28 U.S.C. § 1331. Although plaintiffs LSGC and LED Holdings are incorporated in Delaware and thus destroy complete diversity, defendants argue that they have been fraudulently "joined" as parties. The court disagrees.

As a preliminary matter, few courts appear to have addressed the application of the fraudulent joinder rule to allegedly improper plaintiffs. Those that have, however, apply the rule to plaintiffs in the same manner as it is applied against defendants. See Grennell v. W.S. Life Ins. Co., 298 F. Supp. 2d 390, 395 (D. W. Va. 2004) (citing Cal. Dump Truck Owners Ass'n v. Cummins Engine Co., 24 Fed. Appx. 727, 729 (9th Cir. 2001)(unpublished) (Ninth Circuit assumed without deciding that fraudulent joinder doctrine applies to plaintiffs as well as defendants)).

Here, the defendants contend that all of plaintiffs' causes of action either derive from an agreement, the JDA, between plaintiff LEI and Philips Solid-State Lighting Solutions (PSSLS) or seek to enforce rights that are LEI's alone. As described above, plaintiffs' complaint alleges that LED Holdings acquired the business operations and assets of LEI in 2007. Complaint ¶ 45. LED Holdings then used these to acquire a controlling interest in LSGC. Id.

Defendants have not shown that there is no possibility that LED Holdings or LSGC could succeed on their claims against defendants. See Ritchey, 139 F.3d at 1318. For instance, the JDA

16

allows for its rights and obligations to be assigned to a signatory's "successors and assigns" provided that the other party consents. Notice of Removal, Exh. A ¶ 8. Consent may not be unreasonably withheld. Id. A court could find that PSSLS consented by their conduct to the assignment of LEI's rights under the JDA, or that PSSLS unreasonably withheld its consent, or that such consent was unnecessary under applicable law.[3] See, e.g., Martin v. Peyton, 246 N.Y. 213 (1980) (modification of a contract may be proven circumstantially by the conduct of the parties); see also Black v. Sullivan, 49 Cal. App. 3d 557 (1975); Trubowitch v. Riverbank Canning Co., 30 Cal. 2d 335, 342 (1947); Newmire v. Chapman, 18 Cal. App. 2d 360 (Cal. Ct. App. 1937). Defendants have not shown by clear and convincing evidence that this, or any other, theory for LSGC's and LED Holdings' recovery is not viable. See Ritchey, 139 F.3d at 1318.

## IV. CONCLUSION

For the reasons provided herein, the motion to remand is GRANTED. The action is REMANDED to the Superior Court of the State of California, County of Sacramento. The clerk is directed to close the case.

IT IS SO ORDERED.

DATED: June 3, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[3] Defendants represent to the court that New York state law governs the JDA.

17